IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JUANITA CARPENTER<br>                      *Plaintiff,*<br><br>        v.<br><br>RAPPAHANNOCK RAPIDAN COMMUNITY SERVICES BOARD AND AREA AGENCY ON AGING<br>                      *Defendant.* | CIVIL ACTION NO. 3:11-CV-17<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff brought this action seeking declaratory and injunctive relief, and money damages, for Defendant's alleged deprivation of her rights under the Fourteenth Amendment to the Constitution. Now pending before the court is Defendant's motion to dismiss, asserting (1) that the action is barred under the Eleventh Amendment, and (2) that there is no implied right of action for the relief sought under the Fourteenth Amendment (docket no. 12). For the reasons that follow, the motion will be granted in part and denied in part.

I.

On April 19, 2010, Plaintiff Juanita Carpenter ("Carpenter") was terminated from her position as a qualified mental health care provider for Defendant Rappahannock Rapidan Community Services Board and Area Agency on Aging ("RRCSB"). In essence, Carpenter alleges that the RRCSB's refusal to grant her a pre-termination hearing deprived her of certain due process rights. *See Cleveland Bd. of Educ. v. Loudermill*¸ 470 U.S. 532, 542 (1985) (holding that an employee who has a property interest in his employment is entitled to a pre-termination

1

hearing). Although she initially proceeded directly under the Fourteenth Amendment, she has filed an amended complaint pursuant to 42 U.S.C. § 1983.

A.

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Thus, the Eleventh Amendment "confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant." *Va. Office for Protection & Advocacy v. Stewart*, 131 S.Ct. 1632, 1637 (2011). This immunity from suit "extends beyond the literal text of the Eleventh Amendment." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 754 (2002). For instance, courts have long understood that an unconsenting state may not be sued in federal court by its own citizens. *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 107 n.12 (4th Cir. 2011).

A state may waive sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675-78 (1999). However, absent a clear constitutional grant, Congress is generally powerless to deprive a state of such immunity. Thus, "Congress may abrogate a State's immunity when it acts under § 5 of the Fourteenth Amendment . . . but not when it acts under its original Article I authority to regulate commerce." *Stewart*, 131 S.Ct. at 1638 n.2 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996)). Section 5 of the Fourteenth Amendment empowered Congress to enact § 1983, which allows a private right of action against any "person" who deprives another of a constitutional right, under color of state law. 42 U.S.C. § 1983. It is well established that "municipalities and other local government units" are "persons" for purposes of § 1983. *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 690 (1978). Moreover, the Eleventh Amendment is not generally a bar to municipal liability. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977). In contrast, a state is not a "person" for purposes of § 1983.[1] *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). And a state, or a political subdivision of a state that is "an arm of the state subject to its control," is entitled to Eleventh Amendment immunity. *Lake County Estates v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401-02 (1979).

In evaluating an entity's claim of Eleventh Amendment immunity, a district court is guided by the "twin reasons for the Eleventh Amendment: (1) the States' fears that federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin, and (2) the integrity retained by each State in our federal system." *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001) (quotations omitted). The "principal factor, upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the State's treasury." *Id.* This factor is often accorded dispositive weight. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994). However, even if a judgment would not affect the state treasury, "the entity may still enjoy sovereign immunity if the judgment would adversely affect the dignity of the State as a sovereign and as one of the United States." *Cash*, 242 F.3d at 224. Thus, courts should also consider "(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns – whether local or statewide . . . ; and, (3) the manner in which State law treats the entity." *Id.*

---

[1] As the parties have not briefed the issue, I reserve judgment on whether the Defendant is a "person" for purposes of the statute.

**B.**

In support of its motion, Defendant has proffered extrinsic evidence, which raises a procedural issue that I must briefly address. Although Defendant's motion was filed pursuant to Rule 12(b)(6), it does not challenge the sufficiency of Plaintiff's factual allegations. Rather, it raises jurisdictional questions that might more properly have been brought pursuant to Rule 12(b)(1), which permits the court to consider extrinsic evidence without treating the motion as a summary judgment motion. *See Dira v. Deutch*, No. 97-1119, 1998 WL 276236, at *1 (4th Cir. May 26, 1998) (unpublished) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)); *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991). However, the Federal Rules of Civil Procedure provide that when matters outside of the pleadings are presented to the court on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56," and the parties must be afforded a "reasonable opportunity" to present pertinent evidence related to the motion. Fed. R. Civ. P. 12(d).

Defendant has asked that I consider, *inter alia*, the declaration of Don W. LeMond, Director of the Division of Risk Management of the Virginia Department of the Treasury. The LeMond declaration indicates that the RRCSB is an insured under the Virginia Liability Risk Management Plan ("Plan"), established in accordance with Virginia Code § 2.2-1839. According to Defendant, the "Virginia Code, the Plan itself, and Mr. LeMond's Declaration make clear that any judgment in this case against RRCSB would be paid from the Virginia state Treasury." As I will rule in favor of Plaintiff on the Eleventh Amendment issue, she is not prejudiced by my consideration of Defendant's evidence. Nonetheless, in an abundance of caution, as set forth in the accompanying order, I will grant the parties fourteen days to provide additional evidence that I should have considered in reaching my decision.

The Fourth Circuit has at least twice considered whether the beneficiary of a state-administered insurance plan was entitled to immunity from suit. Although it ultimately found that the defendant was immune in *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996), the court did not base its ruling on the mere fact that judgment would be paid out of the South Carolina State Insurance Reserve Fund, because the court was "unable to discern from the record . . . whether the state pays any premiums on behalf of [the defendant]." 88 F.3d at 1332. In *Bockes v. Fields*, 999 F.2d 788, 790 (4th Cir. 1993), the Fourth Circuit determined that a county board of social services, and department of social services, were immune from suit. The court reasoned that "a substantial portion of [the judgment] would be paid by the Commonwealth" under the state "Public Officials Liability Self-Insurance Plan," because Virginia had paid 80% of the premiums for the plan. 999 F.2d at 790.

Neither *Cromer* nor *Bockes* suggests, as Defendant would hold, that an entity's participation in a state-run insurance plan is dispositive. Moreover, *Bockes* makes clear that not all state administered funds are treated equally for purposes of the Eleventh Amendment inquiry. In *Bockes*, the court acknowledged that the state treasurer "manages a separate trust fund which [covered] liability" for the defendants. 999 F.2d at 790. But the inquiry did not end there. Before concluding that the defendants were immune from suit, the court reasoned that "[o]f the $20,000 judgment . . . , the Plan would cover $10,500: $13,000 for Bockes' lost wages and benefits, minus a $2,500 deductible. And since the Commonwealth funds 80% of the Plan, 80% of this $10,500, or $8,400, would come ultimately from the Virginia treasury." *Id.* It is apparent from the foregoing that *Bockes* may have turned out differently had the defendants paid their own premiums.

This case also involves a state-administered insurance program, which requires the state to establish a "trust fund for the payment of claims covered . . . and all other expenses related to the administration of" the program. Va. Code § 2.2-1839D. However, unlike in *Bockes*, there is no evidence that the state makes any contribution to the fund. Rather, the law requires the Division of Risk Management to "set the premium and administrative cost *to be paid to it* . . . ." Va. Code. § 2.2-1839(E) (emphasis added). Furthermore, the declaration on which Defendant relies explicitly states that "[t]he RRCSB," not the state, "pays the premium for the Plan." Lemond Decl. ¶ 3. *Bockes* and *Carter* thus counsel strongly against finding the Defendant entitled to sovereign immunity.

The RRCSB effectively requests that the court extend sovereign immunity to any beneficiary of a plan established under Virginia Code § 2.2-1839. But such a rule would have the strange result of empowering the state to sell immunity to non-profit health care providers, volunteer drivers for the elderly and infirm, state-court appointed attorneys, and "any local chapter or program of the Meals on Wheels Association of America," among others. Va. Code § 2.2-1839A. Nothing in the case law requires the extension of sovereign immunity to those persons and entities where the state's financial interest is highly attenuated.

Nonetheless, I must also consider "(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns – whether local or statewide . . . ; and, (3) the manner in which State law treats the entity." *Cash*, 242 F.3d at 224. As reflected in the Virginia Code, the state appears to exercise limited control over the Defendant, and community services boards, in general. A community services board is the creation of local governing bodies. *See* Va. Code § 37.2-500 *et seq*. Its members are appointed by local government entities, and by statute, each board is "responsible to the governing body of each county or city that established it." Va. Code § 37.2-501A. Board

6

members may be compensated out of city or county funds, but not out of state or federal funds. Va. Code § 37.2-503. They may be removed, for cause, by the local government. Va. Code § 37.2-502. The Virginia Department of Behavioral Health and Developmental Services may exercise limited influence over community services boards through the issuance of "performance contracts," which are the mechanism through which the department awards funds and encourages the boards to fulfill their statutory purposes. *See* Va. Code. § 37.2-508. But primary oversight of each board's activity appears to belong to local government. *See* Va. Code § 37.2-504 (discussing powers and duties of community services boards). In addition, according to the RRCSB's annual report,[2] the state provided only 23% of revenues for the RRCSB in fiscal year 2010, while federal funds, local funds, and service fees, combined, made up 56% of revenues. Finally, while community services boards work on issues that are of state and national concern, such as mental health, substance abuse, and mental retardation, their purview is limited to "the cities and counties that they serve." Va. Code. § 37.2-500. I cannot therefore conclude that the RRCSB is an "arm of the state." *Lake County Estates*, 440 U.S. at 401-02 (1979).

In light of the foregoing, the RRCSB is not entitled to Eleventh Amendment immunity.

## II.

Plaintiff's original complaint proceeded on the basis of an implied cause of action under the Fourteenth Amendment. (docket no. 1). Defendant then moved to dismiss, relying on *Cale v. City of Covington*, 586 F.2d 311, 313 (4th Cir. 1978), which held that "no action of the type exemplified by *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), should be . . . implied from the Fourteenth Amendment." Although Plaintiff has filed an amended complaint, asserting a claim under § 1983, Defendant's renewed motion still seeks dismissal of Plaintiff's complaint to the extent it pursues relief directly under the Fourteenth Amendment.

---

[2] *Annual Report July 1, 2009 – June 30-2009*, Rappahannock Rapidan Community Services Board & Area Agency on Aging, http://www.rrcsb.org. A court may take judicial notice of public documents. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x. 395, 396-97 (4th Cir. 2006) (unpublished opinion).

7

Plaintiff argues that *Cale* was abrogated by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), a decision that was reaffirmed in *Gilbert v. Homar*, 520 U.S. 924 (1997). Generally, those cases show that a public employee may have a constitutionally protected property interest in his employment. However, as both of those cases were brought pursuant to § 1983, they do not support Plaintiff's argument. *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550 (6th Cir. 1983); *Gilbert*, 520 U.S. at 928.

Plaintiff also cites a number of other cases for the proposition that an individual may not be deprived of his property interests without due process of law. *See McKesson Corp. v. Fla. Alcohol & Tobacco Div.*, 496 U.S. 18, 37 (1990); *Zinernon v. Burch*, 494 U.S. 113, 127-128 (1990); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-40 (1982). That rule is without controversy. However, whether an individual has an implied right of action under the Fourteenth Amendment is a separate question. Thus, none of the cases Plaintiff cites disturb the holding of *Cale*. I must therefore conclude that Plaintiff's claim under the Fourteenth Amendment "merges into her § 1983 claim." *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995); *See also Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 759 (2005).

Accordingly, I will grant Defendant's motion to the extent it seeks to preclude Plaintiff from proceeding directly under the Fourteenth Amendment. Plaintiff will be permitted to proceed under § 1983.

### III.

For the reasons stated herein, Defendant's motion will be granted in part and denied in part in an accompanying order. However, the parties shall have fourteen days to present any other evidence pertaining to Eleventh Amendment immunity.

The Clerk of the Court is directed to send a certified copy of this opinion to all counsel of record.

Entered this  30th  day of June, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE