IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JUANITA CARPENTER<br>                            *Plaintiff,*<br><br>          v.<br><br>RAPPAHANNOCK RAPIDAN COMMUNITY<br>SERVICES BOARD AND AREA AGENCY ON<br>AGING<br>                            *Defendant.* | CIVIL ACTION NO. 3:11-CV-17<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Juanita Carpenter ("Carpenter") seeks declaratory and injunctive relief, and compensatory damages arising out of an alleged deprivation of rights under the Constitution. On June 30, 2011, I issued an opinion and order denying Defendant Rappahannock Rapidan Community Services Board and Area Agency on Aging's ("RRCSB") motion to dismiss, because I found that the RRCSB was not entitled to Eleventh Amendment immunity. *Carpenter v. RRCSB*, No. 3:11-cv-17, 2011 WL 2601513 (W.D. Va. June 30, 2011). The RRCSB has filed a motion for reconsideration (docket no. 28), submitting further evidence of its claim that any recovery in this case would affect the state treasury, and asserting that the earlier ruling was erroneous under Seventh Circuit precedent. *See Paschal v. Jackson*, 936 F.2d 940, 944 (7th Cir. 1991), *cert. denied*, 502 U.S. 1081 (1992). Because Defendant's new evidence does little to disturb the rationale of the earlier opinion, and the Fourth Circuit's decisions in *Bockes v. Fields*, 999 F.2d 788, 790 (4th Cir. 1993) and *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) are controlling, I will deny the motion.

1

## I.

Ordinarily, a litigant is not entitled to reconsideration of an order on the basis of case law or evidence that it could have presented earlier. *See Mateti v. Activus Fin., LLC,* No. DKC 2008-0540, 2009 WL 3633339, at *5 (D.Md. Oct. 27, 2009). However, out of concern that the evidence before the court was insubstantial, in my order denying the motion to dismiss, I granted the parties 14 days to submit additional evidence that might warrant reconsideration of that decision. Moreover, "[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action[.]" *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 576 (2004). It is therefore appropriate to reconsider Defendant's motion to dismiss in light of the new evidence and case law that it has proffered.

## A.

In evaluating an entity's claim of Eleventh Amendment immunity, a district court is guided by the "twin reasons for the Eleventh Amendment: (1) the States' fears that federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin, and (2) the integrity retained by each State in our federal system, including the States' sovereign immunity from suit." *Cash v. Granville County Bd. of Educ.,* 242 F.3d 219, 223 (4th Cir. 2001) (quotations omitted). The "principal factor, upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the State's treasury." *Id*. This factor is often accorded dispositive weight. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994).[1]

---

[1] However, even if a judgment would not affect the state treasury, "the entity may still enjoy sovereign immunity if the judgment would adversely affect the dignity of the State as a sovereign and as one of the United States." *Cash*, 242 F.3d at 224. Thus, courts should also consider "(1) the degree of control that the State exercises over the entity

At issue is whether any judgment in this case would be "paid from the State's treasury" within the meaning of the *Cash* decision. In denying the motion to dismiss, I effectively concluded that a judgment is "paid from the State's treasury" when it is paid out of the general fund, or a special fund supported by state payments. The RRCSB is a beneficiary of a state-administered insurance program, which requires the state to establish a "trust fund for the payment of claims covered . . . and all other expenses related to the administration of" the program. *See* Va. Code § 2.2-1839D. I determined that the RRCSB was not entitled to immunity in large part[2] because a judgment against it would be awarded out of the trust fund, and the evidence showed that the balance of the fund derived from plan beneficiaries' premium payments, rather than state payments. 2011 WL 2601513, at *3. In so deciding, I relied on *Bockes*, 999 F.2d at 790 and *Cromer*, 88 F.3d at 1332, which show that the state's contribution of premium payments *vel non* should be given considerable weight. As in the instant case, both *Cromer* and *Bockes* involved a state-run insurance program, associated with a state-administered trust fund. In *Cromer*, the court did not accord the existence of the fund great weight because it was "unable to discern from the record . . . whether the state pays any premiums on behalf of [the defendant]." 88 F.3d at 1332. In contrast, in *Bockes*, the court gave nearly dispositive weight to the fact that the state paid 80% of the defendant's premiums. 999 F.2d at 790. However, in neither case was the mere existence of a state-administered fund controlling.

Defendant seeks refuge from *Bockes* and *Cromer* in *Paschal v. Jackson*, 936 F.2d 940, 944 (7th Cir. 1991), *cert. denied*, 502 U.S. 1081 (1992). There, the Seventh Circuit found that the Eleventh Amendment barred plaintiffs from recovering unemployment benefits allegedly due from the Illinois Department of Employment Security. Under Illinois law, contributions from

---

or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns – whether local or statewide . . . ; and, (3) the manner in which State law treats the entity." *Id.*

[2] I also considered the factors set forth in *Cash*, 242 F.3d at 224. *See* footnote 1, *supra*.

employers were collected and deposited in one of three accounts maintained by the director of the department. The law required that "[m]oneys in the . . . accounts shall not be commingled with other State funds." 936 F.3d at 942 (citing Ill.Rev.Stat. ch. 48, ¶ 660). Other funds would be paid, ultimately, out of a federal unemployment trust fund. Plaintiffs therefore argued that "the State can have no interest in immunity because it will not have to pay the relief the claimants seek. An award . . . would not affect the state treasury because half of it is reimbursed from the federal treasury and the other half from a segregated fund." *Id.* However, the court disagreed, noting that it had "great difficulty with the view that a state's fiscal structure is dispositive of whether one can sue the state for accrued benefits." *Id.*

As an initial matter, the Seventh Circuit's decision is neither binding on this court, nor persuasive when it conflicts with clear Fourth Circuit precedent. Notably, the *Paschal* court acknowledged its disagreement with a Fourth Circuit case. 936 F.2d at 944 (citing *Brown v. Porcher*, 660 F.2d 1001, 1007 (4th Cir.1981), *cert. denied*, 459 U.S. 1150 (1983) (allowing recovery against South Carolina unemployment fund)). In addition, Defendant's reading of *Paschal* conflicts with *Bockes* and *Cromer*. Moreover, its reading is incorrect. *Paschal* is distinguishable from *Bockes* and *Cromer*, where the defendants were county officials, because it hinged on a finding that the action was "against the state and judgment will be entered against the state as an entity." 936 F.2d at 944. But while the Illinois Department of Employment Security is unquestionably a state agency, the RRCSB's status is not so obvious.

For that reason, little weight should be given to the Seventh Circuit's conclusion that the "[t]he trust fund argument also flies in the face of two United States Supreme Court decisions[.]" 936 F.2d at 944 (citing *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573 (1946), and *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, (1944). Those cases are distinguishable from

the instant case for the same reason that *Paschal* is distinguishable. In *Kennecott* and *Great Northern*, taxpayers sued a *state* agency, and a *state* official, respectively, for a refund of tax payments held in trust pending the outcome of the litigation. It is in that context that the court concluded that segregation of funds was "immaterial." 322 U.S. at 53. "[A]n action for damages against the State . . . must be paid from the State's own coffers – whether the damages come directly from the State's general fund or from some other state fund." *Patsy v. Board of Regents*, 457 U.S. 496, 530 n. 17 (1982) (Powell, J. dissenting). But because any judgment in this case would be entered against the RRCSB, *Kennecott*, *Great Northern,* and *Paschal* are inapposite.

Nor is it dispositive, as Defendant now suggests, that Virginia law vests discretion in a state entity to "interpret[] and determin[e] coverage under the [insurance] Plan." Va. Code. § 2.2-1839A. Defendant argues that since this provision allows the state to determine whether a claim is covered, and whether to litigate or settle a claim, any judgment against an insured would therefore be paid out of money "controlled" by the state. However, were Defendant correct, the inquiry in *Bockes* and *Cromer* would have ended with a determination that the defendants were insured under a state-administered plan.

**B.**

Defendant's new evidence does not change the analysis. The new evidence suggests that although the RRCSB pays its insurance premium, it "receive[s] money from the state to pay its premium." Reply Br. at 2. Approximately 41.12% of the RRCSB's funding for FY 2010 came from state funds. Jones. Decl. at ¶ 8. The RRCSB therefore reasons that approximately $6,219 of its $15,125 premium for FY 2010 is traceable to state funds. *Id.* at ¶ 9.

However, Defendant's evidence also suggests that the state funds consist exclusively of payments made in return for contractual obligations. *Id.* at ¶ 4. Thus, to accept the Defendant's

5

position would extend Eleventh Amendment immunity to any party receiving revenue through state contracts. But the link between a judgment against such a party and depletion of the state treasury is weak. It is conceivable that if the Defendant lost the instant case on the merits, its insurance premium might rise; to compensate, it might then demand more payment for its services; and the state might ultimately acquiesce. But this remote and contingent possibility raises little danger of bringing about the "financial ruin" of the state, or the degradation of its "integrity . . . in our federal system." *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001). A "speculative, indirect, and ancillary impact on the State treasury . . . does not give rise to Eleventh Amendment protection." *Id.* at 225.

Defendant has also introduced new evidence that the state waived the RRCSB's premium for FY 2011. However, there is no reason to suspect that the waiver exercised any effect on the general fund.

## II.

For the foregoing reasons, Defendant's motion for reconsideration will be denied.

The Clerk of the Court is directed to send a certified copy of this opinion to all counsel of record.

Entered this __5th__ day of August, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE